UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STACEY GRIFFIN, ET AL. | CIVIL ACTION NO: 22-CV-3694 |
| VERSUS | JUDGE DARREL JAMES PAPILLION |
| UNITED STATES OF AMERICA | MAGISTRATE JUDGE JANIS VAN MEERVELD |

## ORDER AND REASONS

Before the Court is a "Motion for Partial Summary Judgment on the Affirmative Defense of the Comparative Fault of Eric 'Josh' Williams" filed by Plaintiff Kimberly Williams ("Plaintiff"), individually and on behalf of the estate of her deceased husband, Eric Joshua Williams. R. Doc. 51. The Government opposes the motion. R. Doc. 64. For the following reasons, Plaintiff's motion is **DENIED**.

## BACKGROUND

This suit arises from the November 29, 2021 deaths of Joseph Newby ("Mr. Newby") and Eric Joshua Williams ("Mr. Williams") (collectively, "Decedents"). R. Doc. 1 at ¶ 1. Decedents died during a boating accident on the Pearl River near Bogalusa, Louisiana, after they unknowingly traveled over a low sill dam constructed and maintained by the United States Army Corps of Engineers. *Id.* at ¶ 9. Following the accident, Plaintiff filed suit, alleging the Government was negligent for failure to adequately warn Decedents of the dangers of the dam.[1] *Id.* at ¶ 13. On January 13, 2023, the Government filed its Answer and raised comparative fault as an affirmative

---

[1] Mr. Williams's daughter, Emily Williams, also filed suit, but does not join in the instant motion. *See Williams, et al. v. United States of America*, No. 22-CV-3825 (E.D. La.). Separately, Stacey Griffin, Mr. Newby's wife, and Courtney Braswell, Mr. Newby's daughter, filed this lawsuit. On January 19, 2023, Chief Judge Nannette Brown granted the Government's motion to consolidate the cases, and Plaintiff and Emily Williams's case was consolidated with the instant case. All citations to Plaintiff's Complaint and the Government's Answer refer to record documents in *Williams, et al. v. United States of America*, No. 22-CV-3826 (E.D. La.).

defense. R. Doc. 9 at ¶ 5. On September 13, 2023, Plaintiff filed the instant motion for partial summary judgment urging the Court to find Mr. Williams was not comparatively at fault for the accident.

## LEGAL STANDARD

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The party seeking summary judgment has the initial burden of showing the absence of a genuine issue of material fact by pointing out the record contains no support for the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (quoting FED. R. CIV. P. 56(c)). Thereafter, if the nonmovant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).

"Ordinarily, 'credibility determinations, the weighing of evidence, and the drawing of legitimate inferences are jury functions, not those of a judge.'" *Fleming v. Bayou Steel BD Holdings II, LLC*, 83 F.4th 278, 293 (5th Cir. 2023) (quoting *Anderson*, 477 U.S. at 255, 106 S. Ct. 2505)). In a bench trial, however, where the judge is the trier of fact, "'the district court has somewhat greater discretion to consider what weight it will accord the evidence'" when considering a motion for summary judgment. *Id.* (quoting *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991)). "Specifically, 'even at the summary judgment stage a judge in a bench trial has

the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result.'" *Id.* But, even with this somewhat greater discretion, a district judge cannot grant summary judgment in the face of a genuine dispute of material fact.

## ANALYSIS

In her motion, Plaintiff urges the Court to find Mr. Williams was not at fault for the accident. Initially, Plaintiff argues the Government did not properly plead comparative fault in its Answer and, thus, the Court should disregard it as an affirmative defense. Plaintiff then argues, regardless of whether the Government properly pleaded comparative fault, Mr. Williams cannot be found comparatively at fault because he was merely a passenger on Mr. Newby's boat, and under Louisiana law, boat passengers cannot be held at fault for accidents except under very limited circumstances. R. Doc. 51-1 at 4-5.

In its opposition, the Government argues it properly pleaded comparative fault, and even if it did not, Plaintiff was put on notice of the affirmative defense throughout this litigation. The Government also argues Mr. Williams's status as a boat passenger does not absolve him from being found comparatively at fault because general maritime law, which the Government argues controls in this case, does not recognize this exemption. The Government argues that under general maritime law, a finding of comparative fault requires only a showing that Mr. Williams failed to use "reasonable care under the circumstances," and argues there is, at a minimum, summary judgment evidence showing Mr. Williams did not exercise reasonable care under the circumstances. R. Doc. 64 at 7.

I.      *Whether the Government Pleaded Comparative Fault*

Federal Rule of Civil Procedure 8 requires a party responding to a pleading to "affirmatively state any avoidance or affirmative defense." FED. R. CIV. P. 8(c)(1). While an affirmative defense "need not be accompanied by extensive factual allegations," it must "provide fair notice to the plaintiff of the nature of the defense." *Schlosser v. Metro. Prop. & Cas. Ins. Co.*, No. 12-CV-1301, 2012 WL 3879529, at *3 (E.D. La. Sept. 6, 2012). A failure to properly plead an affirmative defense, however, is not necessarily fatal. Notably, "[a] defendant does not waive a defense if it was raised at a 'pragmatically sufficient time' and did not prejudice the plaintiff in its ability to respond." *Rogers v. McDorman*, 521 F.3d 381, 385-86 (5th Cir. 2008). In determining whether a defendant waived an affirmative defense, the court "look[s] at the overall context of the litigation" to determine whether there is evidence of prejudice and whether the plaintiff had "sufficient time to respond to the defense . . . before trial." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (collecting cases).

The Government alleges in its Answer that "[t]he plaintiffs or the plaintiffs' decedent are comparatively at fault for the claimed injuries and damages," but fails to provide any factual basis to support this defense. R. Doc. 9 at 5. Indeed, this almost surely falls short of the Government's burden under Rule 8. Nevertheless, a review of the litigation in this case shows Plaintiff had fair notice of the Government's potential comparative fault defense throughout the pendency of this lawsuit. Regarding Plaintiff's knowledge, in February 2023, Plaintiff served discovery on the Government asking for evidence establishing fault on the part of Mr. Williams, and listed in the deposition notice of the Corps's corporate representative "[k]nowledge and information concerning any witness, facts, photographs, documents, or things supporting, refuting, or pertaining to any contention of comparative fault of Eric Joshua Williams." R. Docs. 64-2 at 3,

4

64-4 at ¶ 20. And perhaps most important to the issue of whether Plaintiff knew of the defense with sufficient time to defend against it is that it was raised on summary judgment *by Plaintiff* more than seven months before trial. *See Motion Med. Techs., LLC v. Thermotek, Inc.*, 875 F.3d 765, 772 (5th Cir. 2017) (the Fifth Circuit has "repeatedly rejected waiver arguments when a defendant raised an affirmative defense for the first time at summary judgment—or even later"); *see also Weiss v. Allstate Ins. Co.*, 512 F.Supp.2d 463, 468 (E.D. La. 2007) (finding plaintiff was put on sufficient notice of affirmative defenses raised in a motion for summary judgment nearly two months before trial). The Government's defense has been prevalent throughout this lawsuit and, for this reason, the Court finds the defense was pragmatically raised and that Plaintiff cannot reasonably claim to be unfairly surprised or prejudiced in responding to it. The Court therefore finds the Government's comparative fault defense is properly before it, and now turns to whether Plaintiff is entitled to summary judgment.

## II. Whether Plaintiff Is Entitled to Summary Judgment

At the outset, the Court must first decide whether general maritime law or Louisiana law is the applicable substantive law in this case. The Court must then decide, under the applicable substantive law, whether there is a genuine issue of material fact regarding whether Mr. Williams bears fault for the accident. The Court will consider each in turn.

### A. Whether Louisiana or General Maritime Substantive Law Governs

Plaintiff, in her Complaint, specifically invokes admiralty jurisdiction by alleging "[t]his is an admiralty and maritime action brought pursuant to the Suits in Admiralty Act, 46 U.S.C. § 30901, *et seq.*, and Rule 9(h) of the Federal Rules of Civil Procedure." R. Doc. 1 at ¶ 4. A litigant's decision to file suit under admiralty jurisdiction has "[n]umerous and important consequences," including that the substantive law applied in maritime cases is federal common law. *T.N.T. Marine*

*Serv. Inc. v. Weaver Shipyards & Dry Docks Inc.*, 702 F.2d 585, 586 (5th Cir. 1983); *E. River S.S. Corp. v. TransAm. Delaval, Inc.*, 476 U.S. 858, 864, 106 S. Ct. 2295 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law.") (internal citation omitted). Plaintiff brings claims for negligence, and because "general maritime law has recognized the tort of negligence for more than a century," the Court must apply general maritime law to Plaintiff's negligence claims. *Norfolk Shipbuilding & Drydocking Corp. v. Garris*, 532 U.S. 811, 820, 121 S. Ct. 1927 (2001).

The application of general maritime law does not necessarily exclude state law, however. Indeed, courts may apply "state law where it serves to supplement, but not contravene, the general maritime law by filling a 'gap' therein."[2] *Parekh v. Argonautica Shipping Invs. B.V.*, No. 16-CV-13731, 2017 WL 3456300, at *2 (E.D. La. Aug. 11, 2017) (citing *Yamaha Motor Corp. USA v. Calhoun*, 516 U.S. 199, 206, 116 S. Ct. 619 (1996)). General maritime law may be supplemented with state law when: "(1) it does not conflict with an applicable act of Congress; (2) it does not work material prejudice to a characteristic feature of general maritime law; or (3) it does not interfere with the proper harmony and uniformity of the general maritime law in its international and interstate relations." *Cole v. Oceaneering Int'l, Inc.*, No. 21-CV-1348, 2023 WL 5411307, at *9 (E.D. La. Aug. 22, 2023) (citing *In re Antill Pipeline Const. Co., Inc.*, 866 F.Supp.2d 563, 567 (E.D. La. 2011)).

The guest passenger status doctrine cited by Plaintiff does not properly supplement general maritime law. Although it does not appear that the guest passenger doctrine conflicts with an act of Congress, the Court finds it would materially prejudice a feature of general maritime law and interfere with the proper harmony and uniformity of general maritime law. As the Fifth Circuit

---

[2] Plaintiff does not argue Louisiana's guest passenger doctrine supplements admiralty law, but the Court is obliged to consider whether it does to properly adjudicate the issues presented.

has explained, "comparative fault has long been the risk-allocating principle under the maritime law." *Lewis v. Timco, Inc.*, 716 F.2d 1425, 1428 (5th Cir. 1983). The guest passenger status doctrine would change the general maritime law fault allocation landscape by potentially absolving Mr. Williams of liability, and would thereby frustrate comparative fault under admiralty law. *In re Antill*, 866 F.Supp.2d at 569 ("Because the effect of the state [law's] application could be to totally shield one party from all liability to another party . . . , the doctrine of pure comparative fault would be frustrated and materially prejudiced.").

Application of the guest passenger status doctrine would also interfere with the proper harmony and uniformity of general maritime law. This consideration requires balancing the interests in uniformity of maritime law against the state law at issue. *See Yamaha*, 516 U.S. at 213-16, 116 S. Ct. 619. A number of courts have found "the uniformity concerns . . . regarding the governance of liability between parties in wrongful death actions by nonseamen in state territorial waters . . . are rather strong." *In re Antill*, 866 F.Supp.2d at 569 (citing *Calhoun v. Yamaha Motor Corp. USA*, 216 F.3d 338, 351 (3d Cir. 2000)). And while states enjoy significant latitude to create their own maritime safety standards, courts have distinguished between true safety standards and frameworks "governing fault allocation and denying all recovery to a party who falls within its ambit," finding the latter does not outweigh concerns of uniformity. *Id.* The effect of Louisiana's guest passenger status doctrine is to completely absolve a potentially negligent party from fault merely because that party was not operating a boat. The Court does not interpret this framework as a safety standard, and surely not one that outweighs the need for uniformity of the application of liability in wrongful death actions by nonseamen. Accordingly, the Court finds the guest passenger status doctrine cannot apply in this case.

7

B. *Whether There Is a Genuine Issue of Material Fact that Mr. Williams Is Comparatively at Fault for the Accident*

Having found that general maritime law applies to the comparative fault analysis in this case, the Court now turns to whether there is a genuine issue of material fact as to whether Mr. Williams exercised reasonable care under the circumstances. *Derouen*, 141 F.Supp.3d at 667 (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S. Ct. 406 (1959)) ("The test and standards for a finding of fault or negligence under general maritime law is reasonable care under the circumstances."); *Theriot v. United States*, 245 F.3d 388, 400 (5th Cir. 1998) ("We agree that the appropriate standard of care in an allision case is reasonable care under the circumstances.").

Considering the record, the Court finds there is at least a genuine issue of fact as to whether Mr. Williams acted reasonably under the circumstances. Notably, the Government offers evidence Mr. Williams and Mr. Newby went boating near the Pool's Bluff dam although they were unfamiliar with the area. *See Theriot v. United States*, 245 F.3d 388, 401 (5th Cir. 1998) (affirming the district court's finding the boat's occupants did not exercise reasonable care under the circumstances by boating in an unfamiliar area). Decedents never visited the Pool's Bluff boat launch or dam, and in the ten years leading up to the accident, neither Decedent had driven a boat on the Pearl River. R. Docs. 64-8 at 3, 64-9 at 3. Plaintiff testified she learned the Decedents stopped at a gas station and convenience store on their way to the Pool's Bluff boat launch to ask for "directions because they didn't know where it was." R. Doc. 64-12 at 13. The Government also produces evidence that no maps, charts, or other directional aids were found with either Decedent or their belongings. R. Doc. 64-10 at 3, 64-11 at 3-4.

There is also summary judgment evidence showing the conditions under which Decedents were boating were not ideal for safety. For example, the Government shows Decedents may have

8

launched the boat at or near sunset. Larry Edward Gill, whose home overlooks the Pool's Bluff boat launch, described hearing and seeing Mr. Newby's boat launch and then begin moving towards the canal. Mr. Gill testified he began hearing Mr. Newby's boat engine around 4:00 p.m., which was shortly before sunset that day. R. Docs. 64-14 at 6, 10, 64-6 at 17. Furthermore, there is evidence Decedents may have acted unreasonably by not using life jackets. Karl Kingery, one of Plaintiff's experts, for example, testified to the prudence of wearing a life jacket while boating. R. Doc. 58-1 at 28. Plaintiff argues it is of no consequence that neither Decedent was found with a life jacket because, like Mr. Newby's pants, the life jackets could have come off during or after the accident. The Court recognizes Mr. Williams could certainly have been wearing a life jacket, but finds the lack of a recovered life jacket could have also been the result of Mr. Williams not wearing a life jacket on the day of the accident. Finally, the Government offers photographic evidence of two signs reading "Danger Dam 100 Ft. Ahead," and diagrams of the Pool's Bluff canal and river showing the Decedents would have passed both signs before reaching the dam. R. Doc. 64-6 at 6-8. There is, therefore, evidence Mr. Williams, who Plaintiff testified was an experienced boater, may have noticed up to two signs on the banks of the river and ignored them. Or, the existence of these signs shows that had Mr. Williams not gotten into a boat, in unfamiliar water, close to sunset, he might have been saved by signs designed to prevent the tragedy that claimed his life. Taken together, this evidence creates a genuine issue of fact as to whether Mr. Williams acted reasonably under the circumstances. For all of these reasons, Plaintiff's motion is denied.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** Plaintiff's Motion for Summary Judgment (Record Document 51) is **DENIED**.

New Orleans, Louisiana this 11th day of December 2023.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**